[Docket No. 6]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE HONORABLE EDWIN E.
NAYTHONS,

        Plaintiff,

    v.

STRADLEY, RONON, STEVENS &
YOUNG, LLP, and ANDRE L.
DENNIS,

        Defendants.

Civil No. 07-4489 (RMB)

**OPINION**

APPEARANCES:

George Bochetto
Bochetto & Lentz PC
1524 Locust Street
Philadelphia, PA 19102
    Attorney for Plaintiff

Joseph C. Crawford
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
    Attorney for Defendants

**BUMB**, United States District Judge:

## I.    INTRODUCTION

This matter comes before the Court upon Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim. Plaintiff is the Honorable Edwin E. Naythons, a retired United States Magistrate Judge, who served as a private arbitrator in

1

the litigation underlying this matter.  Defendants are the law firm of Stradley, Ronon, Stevens & Young, LLP ("Stradley") and Andre Dennis, Esq. ("Dennis"), who represented one of the parties in the underlying litigation.

Plaintiff has filed the present action alleging that Defendants abused the legal process by filing petitions seeking the recusal of Plaintiff as arbitrator and vacatur of Plaintiff's arbitration decision.  The two-count Complaint contains a common law claim for abuse of process and a claim under the Pennsylvania Dragonetti Act for wrongful use of civil process.  Defendants now move to dismiss the Complaint for failure to state a legally cognizable claim.

## II.  **FACTS**

The facts of the lawsuit underlying this matter are complicated and contested, but the details do not affect the issues presented in this particular case and/or motion. Accordingly, the Court will briefly summarize the facts that are relevant to this motion and necessary to understand the procedural context of this matter.[1]

The underlying litigation first began in July 1995, when Anthony Patterson, a member of the Church of the Lord Jesus

---

[1] The facts are taken from Plaintiff's Opposition and set forth in a light most favorable to Plaintiff.

Christ of the Apostolic Faith (the "Church"), filed an action against Bishop Shelton and Eric Shelton, leaders of the Church, alleging that they had looted the Church's bank accounts and stolen millions of dollars. (Pl. Opp. at 4). On November 30, 2006, after more than a decade of litigation in the Philadelphia Court of Common Pleas, the parties agreed to submit the case to private, binding arbitration. (Id.) Pursuant to the arbitration agreement, each side selected three arbitrators who would hear the evidence and decide the case. (Id.). The parties further agreed that the arbitration would be conducted by a neutral arbitrator, who would control the proceedings as a judge and also serve as the ultimate decision-maker if a majority decision could not be reached. (Id.). Plaintiff was selected to serve as the neutral arbitrator. (Id. at 5).

The arbitration hearing concluded on April 3, 2006, but after two deliberative sessions, the six arbitrators were unable to reach a majority decision. (Id.). Consequently, the decision was left to Plaintiff and on April 26, 2006, he issued his initial adjudication. (Id.). He found against Bishop Shelton and called for an accounting of the removed funds.[2] (Id.). After the ordered accounting was completed, Plaintiff worked on a

---

[2] Defendants challenged Plaintiff's initial adjudication, but on July 10, 2006, Judge Dych of the Court of Common Pleas upheld Plaintiff's decision. (Id. at 8).

final adjudication until July 27, 2006.[3]  (Id. at 10).

However, on July 27, 2006, before the entry of his final decision, Plaintiff learned of a death threat that had been made against him anonymously.  (Id.).  Plaintiff held a conference with the parties on August 3, 2006, to discuss the concerns surrounding the threat.  (Id. at 14).  Defendants urged Plaintiff to recuse himself because of the threat, but Plaintiff declined to do so.  (Id. at 15).

Thereafter, Defendants filed a Petition for Recusal on August 16, 2006 in the Orphans' Division of the Court of Common Pleas (the "Orphans' Court"), accusing Plaintiff of, inter alia, bias.  (Id. at 16).  Plaintiff hired counsel to oppose the recusal effort and submitted a response opposing the petition. (Id. at 17).  In response to Plaintiff's opposition, Defendant Dennis wrote a letter to the Orphans' Court, arguing that Plaintiff was not a party to the proceedings, despite having been named as a "respondent" in another filing in the Orphans' Court and listed as a "party in interest" to the Petition for Recusal. (Id.).  The Orphans' Court agreed with Dennis' argument and struck Plaintiff's response from the record.  (Id.).

Plaintiff issued his final adjudication on October 3, 2006, but dated it July 25, 2006, the date he had originally written

---

[3] Plaintiff added an insert to his opinion on or before August 2, 2006, which did not alter any of the essential findings.  (Id. at 12-13).

it.  (Id. at 18).  On November 2, 2006, Defendants filed a
Petition to Vacate the final arbitration award.  (Id. at 19).
Additionally, on December 21, 2006, Defendants filed a Petition
for a Hearing on their Petition to Vacate as well as their
previous Petition for Recusal.  (Id. at 20).  Defendants'
Petition for Recusal and Petition to Vacate are the filings that
Plaintiff has taken issue with; they constitute the basis for
Plaintiff's current Complaint.[4]

## III. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss for failure to state a
claim upon which relief may be granted must be denied if the
plaintiff's factual allegations are "enough to raise a right to
relief above the speculative level, on the assumption that all
the allegations in the complaint are true, (even if doubtful in
fact)."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965
(2007)(internal citations omitted).  Moreover, "[w]hile a
complaint attacked by a Rule 12(b)(6) motion to dismiss does not
need detailed factual allegations, ... a plaintiff's obligation
to provide the 'grounds' of his 'entitle[ment] to relief'
requires more than labels and conclusions, and a formulaic

---

[4] Plaintiff also lists a number of petitions and motions
that were filed by other parties aligned with Bishop Shelton.
(Pl. Opp. at 19-12).  However, the only filings relevant to this
matter are those filed by Defendants.

recitation of the elements of a cause of action will not do."
Id. (internal citations omitted).

A district court must accept any and all reasonable
inferences derived from those facts. Unger v. Nat'l Residents
Matching Program, 928 F.2d 1392 (3d Cir. 1991); Glenside West
Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J.
1991); Gutman v. Howard Sav. Bank, 748 F. Supp. 254, 260 (D.N.J.
1990). Further, the court must view all allegations in the
Complaint in the light most favorable to the plaintiff. See
Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jordan v. Fox,
Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Therefore, in deciding a motion to dismiss, a court should
look to the face of the complaint and decide whether, taking all
the allegations of fact as true and construing them in a light
most favorable to the nonmovant, plaintiff has alleged "enough
facts to state a claim for relief that is plausible on its face."
Twombly, 127 S. Ct. at 1974. Only the allegations in the
complaint, matters of public record, orders, and exhibits
attached to the complaint matter, are taken into consideration.
Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896
F.2d 808, 812 (3d Cir. 1990).


IV.  DISCUSSION

    A.  Abuse of Process Claim (Count I)

6

As explained by the Pennsylvania Supreme Court, "[t]he gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it[.]" McGee v. Feege, 517 Pa. 247, 253 (1987).  To state a claim for abuse of process under Pennsylvania law, a plaintiff must allege that "the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to the plaintiff." Hart v. O'Malley, 647 A.2d 542, 551 (Pa. Super. Ct. 1994) (quoting Rosen v. American Bank of Rolla, 627 A.2d 190, 192 (Pa. Super. Ct. 1993)) (internal quotations omitted).  In their motion to dismiss, Defendants argue that Plaintiff has failed to satisfy any of these elements.

### 1.  Legal Process Used Against Plaintiff

Defendants assert that Plaintiff lacks standing to bring an abuse of process claim because he was not a party to the underlying civil proceedings and, thus, legal process was not used against him.  (Def. Motion at 21).  Specifically, Defendants argue that their petitions to vacate the arbitration ruling and to recuse Plaintiff were not directed at Plaintiff but sought to challenge Plaintiff's decisions.  (Id. at 22).  Defendants contend that these petitions "imposed no obligation on Arbitrator Naythons to respond" and cite the September 20, 2006 decree of the Orphans' Court Division of the Court of Common Please of

Philadelphia, in which Judge Herron struck Plaintiff's responsive pleadings, stating that "as an arbitrator who served in a quasi-judicial capacity, he is not a party in the proceedings." (Id. at 22-23; Ex. 1).

In response, Plaintiff makes two arguments. First, he asserts that he was in fact "named as a party-respondent in the Orphans' Court, and Defendants listed him as a 'party in interest' on their Petition for Recusal." (Pl. Opp. at 30). Second, Plaintiff argues that he has standing by virtue of the aggrievement he suffered as a result of Defendants' allegations of fraud and misconduct. (Id.). Thus, according to Plaintiff's argument, even if Plaintiff was not an actual named party in the underlying civil proceedings, he still has standing for his present abuse of process claim because Defendants' petitions were "aimed" at Plaintiff and "intended to have a direct and immediate impact" on him. (Id. at 32, 35).

As to Plaintiff's first argument, the petition that actually listed Plaintiff as a "respondent" was not filed by Defendants in this action, Stradley, on behalf of Bishop Shelton, but by Blank Rome on behalf of the General Assembly of the Church. (See Pl. Opp., Ex. 2 at 2). Although Plaintiff argues that because the Stradley Defendants filed their petitions "under the same Orphans' Court docket number" they effectively named Plaintiff as a party (see Pl. Opp. at 34, n. 7), such argument ignores the essence of this first element – that the defendant used a legal

process against the plaintiff.  The facts that Defendants filed
their petitions under the Trustees' docket number and listed
Plaintiff among "other parties" on their civil cover sheet are
irrelevant to the question and only serve to muddy the waters.
Thus, Plaintiff's first argument has no merit.

Concerning Plaintiff's second argument — that Defendants'
petitions were "aimed" at Plaintiff, the law is clear that the
legal process invoked by Defendants must have been used "against"
Plaintiff.  Hart, 647 A.2d at 551.  While Plaintiff is correct
that this requirement has been softened to allow others who were
not officially named as parties in the underlying suit to bring
claims of abuse of process, the cases Plaintiff relies on are
readily distinguishable from the current situation.

In Cruz v. Princeton Ins. Co., 925 A.2d 853 (Pa. Super.
2007), the court allowed the parents of a minor to file an abuse
of process action despite the fact that they were not parties to
the underlying medical malpractice action.  The court explained
that "the petition's undeniable aim was the removal of [the
parents] as [the minor's] guardians" and, thus, the parents were
"the legal object of the petition."  Id. at 857.  This Court
finds a petition to remove parents as guardians of a minor very
different from a petition to recuse an arbitrator or to vacate
his decision.  Despite Plaintiff's characterization that the
parents in Cruz were "involved in resolving a dispute between
parties to the litigation[,]" the parents did not play the role

9

of decision-maker in that case.  Here, Plaintiff was the decision-maker and the petition sought judicial review of his decision.

Similarly, in Sands v. Living Word Fellowship, 34 P.3d 955 (Ala. 2001), the court held that a parishioner of a church had standing to bring an abuse of process claim notwithstanding his absence as a party in the underlying proceeding.  In the underlying action, parents of a minor had obtained an injunction that prohibited members of the church from having contact with the minor.  The court held that because the parishioner was a "member" of the church, the injunction enjoined his conduct and, thus, the underlying proceeding had a direct impact on him even though he was not formally a party.  (Pl. Opp. at 33).  Thus, the Sands case is distinguishable from the present one in that the plaintiff did not serve as the judge in the underlying suit, unlike Plaintiff Naythons.  The third case cited by Plaintiff, Bd. of Ed. v. Farmingdale Teachers Ass'n, Inc., 38 N.Y.2d 397 (1975), is inapplicable for the same reason.

At oral argument, counsel for Plaintiff candidly acknowledged the dearth of case law in support of his position that an arbitrator has standing to bring a claim for abuse of process.  In fact, counsel urged this Court to be "the first" to allow arbitrators whose reputations have been besmirched by unfounded allegations of fraud and misconduct the opportunity for

vindication.[5]  Because the doctrine of judicial privilege
precludes Plaintiff from bringing a claim for defamation, counsel
argued, Plaintiff has no alternative means of remedying the
alleged wrong committed by Defendants.[6]

Although evocative, counsel's argument does not persuade
this Court to expand the abuse of process claim to reach the
Plaintiff here.  Aside from the lack of supportive authority
directly on point, Plaintiff fails to acknowledge that the system
of judicial review is designed, in part, to serve as a means of
protection for arbitrators and judges alike.  On appeal of
Plaintiff's arbitration decision, if the reviewing court finds
that Defendants did indeed overstep their bounds by making
baseless allegations of fraud and misconduct, Plaintiff will
likely be vindicated by that court's decision rejecting
Defendants' contentions.[7]  Beyond this declaratory vindication,
the reviewing court also has the power to sanction Defendants or
hold them in contempt as appropriate.  See, e.g., Binder v.

---

[5] Similarly, in his brief, counsel characterized this case
as "an ideal opportunity to send a firm message to the Bar about
the line which separates permissible zealous advocacy on the one
hand, and abuse of the judicial system through 'scorched earth'
litigation tactics on the other."  (Pl. Opp. at 1).

[6] Counsel rejected the Court's suggestion that enforcement of
the Professional Rules of Conduct would provide effective
redress, arguing that such remedy is not public and, thus, cannot
compensate for the damage done to Plaintiff's reputation.

[7] The Court acknowledges counsel's argument that at times
this judicial review may not be adequate where, for example, the
reviewing court, for whatever reason, does not reach the issue.

Triangle Pub., Inc., 442 Pa. 319, 324 (1971) (noting that
judicial privilege exists in part because "courts have other
internal sanctions against defamatory statements, such as perjury
or contempt proceedings").

Moreover, this Court finds that the rationale underlying the
long-standing doctrine of judicial privilege weighs against
counsel's novel argument.  Under the doctrine of judicial
privilege, "statements made by judges, attorneys, witnesses and
parties in the course of or pertinent to any stage of judicial
proceedings are absolutely privileged and, therefore, cannot form
the basis for liability for defamation."  Pawlowski v. Smorto,
588 A.2d 36, 41 (Pa. Super. 1991) (emphasis added) (citing
Binder, 442 Pa. 319; Post v. Mendel, 510 a. 213 (1986); Triester
v. 191 Tenants Ass'n, 415 A.2d 698 (Pa. Super. 1979)).  As the
Pennsylvania Supreme court explained,

> [t]he reasons for the absolute privilege are well
> recognized.  A judge must be free to administer the law
> without fear of consequences.  This independence would
> be impaired were he to be in daily apprehension of
> defamation suits.  The privilege is also extended to
> parties to afford freedom of access to the courts, to
> witnesses to encourage their complete and unintimidated
> testimony in court, and to counsel to enable him to
> best represent his client's interests.

Binder, 442 Pa. at 323-24 (emphasis added).

Thus, the judicial privilege affords counsel immunity from
liability so that he may zealously advocate on his client's
behalf without exposing himself to potential defamation claims.
The same rationale applies to this case, where the liability is

12

not based in defamation but in abuse of process.  In this Court's view, were Plaintiff allowed to proceed in his claim for abuse of process, the effect would be a circumvention of the doctrine of judicial privilege and, ultimately, a chilling of zealous advocacy.

Given the lack of authority to support Plaintiff's position, the inherent protection afforded by the system of judicial review, and the underlying rationale of the judicial privilege, which this Court finds applicable in the abuse of process context, this Court holds that Plaintiff does not have standing to pursue his abuse of process claim.

### 2.    Perversion of Process

Even if Plaintiff did have standing to bring an abuse of process claim, Defendants argue that Plaintiff has failed to show that Defendants perverted a legal process.  Specifically, Defendants assert that by filing their petitions, they were not "perverting" any process but "pursuing a permissible, legitimate use of the process, which was to seek judicial review and persuade a reviewing court to overturn and vacate Arbitrator Naythons' recusal decision and adjudication."  (Def. Motion at 24-25).  Plaintiff counters by arguing that Defendants "engaged in a 'scorched-earth' litigation campaign for the improper purpose[s] of delaying the enforcement of binding and valid arbitration awards[,]" "allowing Defendants' client ... to retain

13

control of the Church[,]" and "aggrandizing themselves with the
billing and receipt of enormous legal fees..."  (Pl. Opp. at 36).

With regards to the "perversion of process" element,
Pennsylvania courts have held that there must be "[s]ome definite
act or threat not authorized by the process, or aimed at an
objective not legitimate in the use of the process." <u>Hart</u>, 647
A.2d at 170-71 (quoting <u>Shaffer v. Stewart</u>, 473 A.2d 1017, 1019
(Pa. Super. Ct. 1984)).  Furthermore, "<u>there is no liability
where the defendant has done nothing more than carry out the
process to its authorized conclusion, even though with bad
intentions</u>." <u>Id.</u> (emphasis supplied).  As the Third Circuit
held, "the point of liability is reached when the utilization of
the procedure for the purpose for which it was designed becomes
so lacking in justification as to lose its legitimate function as
a reasonably justifiable litigation procedure." <u>Gen.
Refractories Co. v. Fireman's Fund Ins. Co.</u>, 337 F.3d 297, 308
(3d Cir. 2003) (internal quotations and citation omitted).

Here, the "processes" at issue are Defendants' petitions to
recuse Plaintiff and vacate Plaintiff's arbitration decision.  To
constitute a "perversion" of these processes, Defendants must
have had some purpose other than seeking the recusal of Plaintiff
or a review of his decision.  Plaintiff's allegations, however,
accuse Defendants of engaging in an onslaught of filings and
seeking to overturn the arbitration decision.  Such allegations
do not amount to a "perversion" of process.

14

As an initial matter, the Court notes that Defendants were not responsible for the majority of the filings Plaintiff refers to in his opposition.  (See Pl. Opp. at 19-21).[8]  Defendants in this case cannot be charged for the barrage of other parties' filings.  Even if Defendants had filed numerous petitions, there is a legal distinction between a claim of improperly initiating a process and a claim of abusing a process after it was initiated. See, e.g., Cameron v. Graphic Mgmt. Assoc., Inc., 817 F. Supp. 19, 21, 22 (E.D. Pa. 1992).  Accordingly, Plaintiff's allegation that Defendants engaged in a "scorched-earth" litigation tactic cannot support a claim for abuse of process.[9]

---

[8] Although the list of filings in Plaintiff's opposition is not entirely clear, it appears that Defendants are actually responsible for four substantive filings (in two separate actions):  1) Petition for Recusal, dated August 16, 2006; 2) Petition for a Citation to Show Cause why the Orphans' Court should not Vacate or Set Aside the "Final Adjudication and Decree", dated November 2, 2006; 3) Appeal of Judge Dych's Order, dated July 26, 2006; and 4) Motion to Set Aside Arbitration Award, dated November 2, 2006.  (Pl. Opp. at 19-21).

[9] The Court finds that the cases Plaintiff relies on to support the notion that certain litigation tactics may constitute perversion of process are distinguishable from the present one. For example, in General Refractories, the plaintiff alleged that the underlying litigation was used for the improper purpose of harassment and avoiding a party's right to recover by delaying the litigation and the Third Circuit held that such allegations "could, if severe enough, constitute perversion of the legal process."  General Refractories, 337 F.3d at 308.  By contrast, Plaintiff here does not allege that Defendants instituted litigation tactics to "harass" him or "avoid his right to recover."  For similar reasons, McGee v. Feege, 517 Pa. 247 (1987), and Shiner v. Moriarty, 706 A.2d 1128 (Pa. Super. 1998), are also distinguishable.

Additionally, the Court notes that the cases Plaintiff cites discussing the courts' unwillingness to tolerate scorched earth

Moreover, Defendants' desire to seek judicial review of Plaintiff's arbitration decision is a legitimate use of process - indeed, it is the purpose of the appeal process.  As stated above, even if Defendants had "bad intentions" in seeking an appeal of Plaintiff's decision, this still would not constitute a "perversion" of process.  See, Hart, 647 A.2d at 170-71 ("there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions").

For these reasons, Plaintiff has failed to show a perversion of process sufficient to state a claim of abuse of process.

### 3.   Harm Caused to Plaintiff

Defendants argue that Plaintiff has not satisfied the third element of an abuse of process claim because he has failed to show that Defendants' filing of petitions caused him harm.  See Hart, 647 A.2d at 551.  Although the Complaint alleges that Plaintiff has suffered damage to his reputation, emotional harm,

---

litigation tactics do not involve claims for abuse of process. Rather, they all discuss Rule 11 sanctions as the appropriate response to such litigation tactics.  See, e.g., Grider v. Keystone Health Plan Center, Inc., 2007 WL 2874408 at *34 (E.D. Pa. 2007); In re Armstrong, 2001 WL 799705 at *4 (E.D. Pa. 2001); Wachtel v. Health Net, Inc., 239 F.R.D. 81, 84 (D.N.J. 2006); St. Germain v. Ross, 2007 WL 347852 (Conn. Super. 2007) (noting that "[i]f a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system") (internal quotations and citations omitted).

and a loss of earnings, Defendants dismiss these claims as "speculative harm [that] should not be recognized as a basis for the abuse of process tort." (Def. Motion at 27). Defendants contend that "[w]hen a person agrees to serve as a [sic] arbitrator, he implicitly agrees that his decisions in the arbitration may be subject to judicial review in light of the prevailing legal standards." (Id.). Additionally, Defendants characterize Plaintiff's allegations of harm as "thinly veiled attempts to portray the statements in the petitions as defamatory." (Id. at 28). Thus, Defendants argue, Plaintiff's alleged harm is nothing more than an attempt to circumvent the judicial privilege doctrine, which precludes the imposition of defamation liability on counsel for statements made in connection with judicial proceedings.

Contrary to Defendant's contentions, this Court finds that Plaintiff has made sufficient allegations of real harm – reputational, emotional, and financial harm. Defendants cite no authority to support their argument that such harm is "speculative and should not be recognized as a basis for the abuse of process tort." (Id. at 27). Indeed, this Court (and others across the country) find quite the opposite to be true.[10]

---

[10] See, e.g., Seltzer v. Morton, 336 Mont. 225, 267 (Mont. 2007) (upholding jury award of $1.1 million in compensatory damages for abuse of process and malicious prosecution where plaintiff presented evidence that "he suffered serious damage to his personal and professional reputation; and that he suffered serious and severe emotional distress").

Although reputational damage may be difficult to quantify, it is not speculative where Plaintiff's career as a private arbitrator depends largely (if not entirely) on having a good reputation as a fair and honest judge.  Plaintiff's claims of economic loss are directly related to his alleged loss of business as an arbitrator.  Moreover, while Defendants may be correct that the risk of facing allegations of fraud and misconduct is one of the "occupational hazards" of being an arbitrator, this does not mean that Plaintiff has suffered no harm as a result of Defendants' allegations.

The Court also rejects Defendants' argument that Plaintiff should not be entitled to recover for the harms he suffered because the same damages are recoverable in a defamation claim, which is precluded here under the doctrine of judicial privilege. Although the Court finds the rationale underlying the judicial privilege persuasive as to the standing issue (as discussed above), it does not follow that the doctrine precludes non-defamation claims that allow for similar damages.  The judicial privilege concerns liability for defamatory acts, not the consequences that stem from those acts.

If Plaintiff had standing to bring an abuse of process claim and alleged a perversion of process, he would be entitled to damages for the reputational, emotional, and financial harm he suffered.  However, the harm Plaintiff has suffered does not overcome his lack of standing nor his failure to allege a

perversion of process.  This Court is certainly sympathetic to Plaintiff's allegations of harm and his circumstances, but the law does not afford Plaintiff relief under this claim.  Thus, Plaintiff's abuse of process claim fails and Defendants are entitled to dismissal of that claim.

### B.  Wrongful Use of Civil Process (Count II)

Count II of Plaintiff's Complaint is a claim for wrongful use of civil proceedings under the Pennsylvania Dragonetti Act, 42 Pa. C.S.A. § 8351.  To state a claim under this Act, a plaintiff must allege three elements:

> 1) that the underlying proceedings were terminated in their favor; 2) that defendants caused those proceedings to be instituted against plaintiffs without probable cause; and 3) that the proceedings were instituted primarily for an improper cause.

Hart, 647 A.2d at 547 (internal citations omitted).  Defendants argue that Plaintiff has not only failed to satisfy any of these elements, but that he also lacks standing to bring a wrongful use of civil process claim.  (Def. Motion at 14).

### 1.  Standing

Similar to their argument concerning Plaintiff's abuse of process claim, Defendants assert that Plaintiff does not have standing to bring a claim for wrongful use of civil process because he was not a party in the underlying civil action.  As the Hart court explained, "[c]ase law has consistently stated, in

19

a variety of circumstances, that an action under 42 Pa. C.S.A. §
8351 for wrongful use of civil proceedings cannot be maintained
by one who is not an original party to the underlying action").
Hart, 647 A.2d at 549; see also Rosen v. Am. Bank of Rolla, 627
A.2d 190, 193 (Pa. Super. Ct. 1993); Pawlowski v. Smorto, 588
A.2d 36, 39 (Pa. Super. Ct. 1991).

Plaintiff disputes that he was not named a party to the
action, citing the Petition for Citation filed by the Trustees of
the Church on August 3, 2006, which refers to Plaintiff as
"Respondent." (Pl. Opp. at 49).  Plaintiff also points out that,
subsequent to the Trustees' filing, Defendant Dennis sent a
letter to Plaintiff requesting that Plaintiff recuse himself and
noting "[y]ou [Plaintiff] are now a named respondent in the
Orphans' Court action..."  (Id.).

As discussed above in the standing analysis for the abuse of
process claim, this Court rejects Plaintiff's argument that the
Stradley Defendants named Plaintiff as a party simply because
they filed their petitions under the same Orphans' Court docket
number as the Trustee's petition, which listed Plaintiff as a
respondent.  Plaintiff was not an original party to the actions
filed by the Stradley Defendants and, thus, lacks standing to
bring a wrongful use of process action.

### 2.  Elements of Wrongful Use of Civil Process Claim

Beyond the standing problem, Defendants argue that Plaintiff

has failed to satisfy the three elements necessary to state a claim for wrongful use of civil proceedings.  First, because Plaintiff was not a party to the underlying proceedings, it cannot be said that such proceedings terminated in Plaintiff's favor.  While Plaintiff argues that "the Orphans' Court action – as it related to Judge Naythons as a party" was terminated in his favor, (Pl. Opp. at 52), as discussed above, that action was not filed by these Defendants and is not the action underlying this claim for wrongful use of civil proceedings.  Thus, Defendants are correct that Plaintiff fails to meet the first element.[11]

Second, Defendants repeat their argument that they did not initiate a civil proceeding against Plaintiff.  As explained above in the abuse of process analysis, this Court agrees.

Third, Defendants assert that they had probable cause to file the petitions seeking Plaintiff's recusal and an order vacating his arbitration decision.  Defendants contend that they

_____

[11] To the extent Plaintiff argues that Defendants' defense of Bishop Shelton provides a basis for his claim under the Dragonetti Act, courts in the Third Circuit have rejected this argument.  See Walasavage v. Nationwide Ins. Co., 633 F. Supp. 378, 380 (E.D. Pa. 1986), aff'd, 806 F.2d 465, 467 (3d Cir. 1986) ("allowing individuals to be sued under this [Dragonetti] act for defending prior actions, would place a considerable burden on the courts by creating a never ending progression of litigation as well as having a chilling effect upon an individual's ability or willingness to defend a suit for fear that he may thereby become liable in a second suit") (internal quotations and citation omitted); see also Paparo v. United Parcel Svc., Inc., 43 F. Supp. 2d 547, 551 (E.D. Pa. 1999) (holding that plaintiff's allegations that defendant "defended against an action ... cannot form the basis of a claim for wrongful use of civil proceedings").

"reasonably believe[d] in the existence of the facts upon which [their petitions for recusal and vacatur] [were] based[,]" as required under Pennsylvania law. (Def. Motion at 19 (citing 42 Pa. C.S.A. § 8352)). To support their claim of probable cause, Defendants allege that, 1) Plaintiff "was biased and prejudiced because he baselessly assumed that Bishop Shelton or his supporters were associated with the [death] threats, which he learned of through an ex parte communication by opposing counsel"; 2) Plaintiff "misrepresent[ed] that he completed his Final Adjudication and Decree before learning of the threats"; and 3) there "were significant irregularities" in the arbitration, including Plaintiff's "disregard of the other four arbitrators" and the "overbreadth" of the arbitration. (Def. Motion at 19-20). Plaintiffs dispute each of Defendants' allegations and further argue that such allegations would require a "factually intensive inquiry" and, thus, cannot be dismissed at the motion to dismiss stage.

This Court agrees with Plaintiff that Defendants' allegations concerning the probable cause issue are factually based and are not appropriate for resolution upon a motion to dismiss. The Court also notes that in a post-briefing letter and again at oral argument, Defendants' counsel alerted this Court to the recent rulings by the Orphans' Court, granting Defendants' petitions for vacatur and recusal. However, this Court finds that the ultimate decisions of the Orphans' Court have no bearing

on the issue of whether Defendants had probable cause at the time they filed their petitions.  Accordingly, this Court does not take into consideration the outcome of these petitions.  The Court finds that the issue of probable cause remains a factual issue that cannot be disposed of on a motion to dismiss.

Finally, although neither party specifically addressed the last element of the claim, i.e., that the proceedings were instituted primarily for an improper cause, the Court finds this issue also necessitates a factual inquiry into the intent of Defendants.  Thus, this issue is similarly inappropriate for disposition at this juncture.

Despite the Court's determination that both the probable cause issue and the improper cause issue cannot be resolved at this stage, Defendants are nevertheless entitled to dismissal of Plaintiff's claim for wrongful use of civil proceedings because Plaintiff lacks standing to bring such claim and has failed to establish at least one of the necessary elements.

## V.   CONCLUSION

For the aforementioned reasons, Defendant's motion to dismiss the Complaint is granted.  An appropriate Order will issue this date.


Dated:  April 30, 2008          s/Renée Marie Bumb
                                RENÉE MARIE BUMB
                                UNITED STATES DISTRICT JUDGE

[Docket No. 6]

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

THE HONORABLE EDWIN E.
NAYTHONS,

               Plaintiff,

    v.

STRADLEY, RONON, STEVENS &
YOUNG, LLP, and ANDRE L.
DENNIS,

             Defendants.

Civil No. 07-4489 (RMB)

**ORDER**

       THIS MATTER having come before the Court upon Defendants' motion to dismiss the Complaint; and the Court having considered the moving papers, and the opposition thereto; and the Court having heard oral argument from the parties; and for the reasons expressed in the Opinion issued this date;

       IT IS HEREBY **ORDERED** that Defendants' motion to dismiss the Complaint is **GRANTED**; and

       IT IS FURTHER **ORDERED** that this case be closed.


Dated:  April 30, 2008       s/Renée Marie Bumb
                             RENÉE MARIE BUMB
                             UNITED STATES DISTRICT JUDGE